IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURI DENEE MILLER, | § | |
| Plaintiff, | § § § | |
| V. | § | CIVIL ACTION No. H-18-1590 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Before the Magistrate Judge[1] in this Social Security appeal is Defendant's Motion for Summary Judgment (Document No. 13), Plaintiff's Response (Document No. 18), Plaintiff's Motion for Summary Judgment (Document No. 15), and Defendant's Response there to (Document No. 17). After considering the cross Motion for Summary Judgment and the applicable law, Magistrate Judge orders that Defendant's Motion for Summary Judgment is DENIED, Plaintiff's Motion for Summary Judgment is GRANTED, and decision is REMANDED for further proceedings.

## BACKGROUND

### Procedural History

Plaintiff, Lauri Denee Miller ("Miller") filed a claim for supplemental security income benefits on May 12, 2016, under title XVI of the Social Security Act, alleging disability onset date

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on August 23, 2018. (Document No. 19).

of February 1, 2009, due to herniated discs in her back, epilepsy, migraines, bleeding ulcers, severe mental problems, post-traumatic stress disorder, bipolar disorder, and Crohn's disease. Doc. 16 at 1. The claim was initially denied on November 10, 2016, and upon reconsideration on January 25, 2017. Miller then filed a written request for a hearing in front of an ALJ on March 2, 2017. Tr. 10. The hearing took place on October 19, 2017 and the ALJ issued a decision on December 1, 2017, finding that Miller was not disabled within the meaning of the Social Security Act. *Id.* at 10, 18. On February 16, 2018, the Appeals Council denied review, making the ALJ's decision the Commissioner's final agency decision. Tr. 1-4. Miller then filed this appeal pursuant to 42 U.S.C. § 405(g).

## Standard of Review

A financially needy individual who is disabled, aged, or blind may apply for supplemental security income benefits under Title XVI regardless of their insured status. 42 U.S.C. § 1382(a). Section 405(g) of the Act governs the standard of review for social security disability cases. This court's review of a Commissioner's decision "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Additionally, "an ALJ's factual findings are 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1149 (2019).

Substantial evidence, "means—and means only— "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154. Substantial evidence "is more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, (5th

Cir. 2002). This court "will not re-weigh the evidence, try the questions de novo, or substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision." *Id.* at 272. "Conflicts in the evidence are for the Commissioner to resolve, not the courts." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)

**Burden of Proof**

A claimant is found to be disabled when, "she is unable 'to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). The existence of such a disability must be demonstrated by, "medically acceptable clinical and laboratory diagnostic findings."
42 U.S.C. § 423(d)(3), (d)(5). The ALJ uses a sequential five-step analysis to determine if a claimant is disabled:

> (1) whether the claimant is presently performing substantial gainful activity;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the impairment meets or equals a listed impairment;
>
> (4) whether the impairment prevents the claimant from doing past relevant work; and
>
> (5) whether the impairment prevents the claimant from performing any other substantially gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Id.* "A finding

3

that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

Under the first step, "substantial" activity means, "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972. "Gainful" activity is, "work activity that you do for pay or profit." *Id.* If the ALJ finds that the " . . . individual . . . is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings." *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); 20 C.F.R. §§ 404.1520(b), 416.920(b) (1989).

In the second step, to be "severe" means an impairment or combination of impairments must significantly limit the individuals physical or mental ability to do basic work activities. 20 C.F.R. § 416.920. Under Fifth Circuit binding precedent, "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). "Re-stated, an impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work." *Salmond*, 892 F.3d at 817. This step requires the claimant to make a *de minimus* showing. *Id.* If the ALJ finds that the claimant does not "have any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] [does] not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 416.920(c).

If the ALJ finds the existence of a severe impairment under step two, the ALJ moves on to step three of the analysis. Under step three, the ALJ will determine whether the impairment or

4

combination of impairments meets or medically equals one or more of the listings in Appendix 1 of 20 C.F.R. § 404 Subpart P. "If [the claimant] [has] an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), [the ALJ] will find [the claimant] disabled without considering your age, education, and work experience. 20 C.F.R. § 416.920(d). If the ALJ finds that ". . . [the claimant] does not meet or equal a listed impairment, [the ALJ] will assess and make a finding about [the claimant's] residual functional capacity [(RFC)] based on all the relevant medical and other evidence in [the] case record . . ." *Id.*

The ALJ will use the RFC assessment under step four to determine whether the claimant can perform their past relevant work. 20 C.F.R. § 416.920(e). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. In determining the RFC, the [ALJ] must consider all of a claimant's impairments, including those that are not severe." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). "[The ALJ] will assess [the claimant's] residual functional capacity based on all the relevant evidence in [the claimant's] case record" as well as all impairments found to be supported by the record. 20 C.F.R. 404.1545(a)(1). "If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made." *Wren*, 925 F.2d at 125.

If the claimant meets their burden of proving she is not currently working and is incapable of performing past relevant work, the burden shifts to the ALJ for step five. If the ALJ finds that the claimant's impairment keeps them from performing their past work, the ALJ will consider [the] assessment of [the claimant's] residual functional capacity . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work [existing in the national economy]." 20 C.F.R. 416.920(a)(4)(v).

To determine whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) claimants' subjective evidence of pain and disability; and (4) claimants age, education, and work history. *Wren*, 925 F.2d at 126.

**Discussion**

Miller raises two issues on appeal. First, that the ALJ failed to weigh the opinion of the consultative examiner. Second, that failure of the ALJ resulted in an RFC that is not supported by substantial evidence. Doc. 16, at 1.

### a. Objective Medical Evidence

A medical report from the Harris Center for Mental Health and IDD dated, May 19, 2016, shows that Miller stopped qualifying for services through MHMRA and her symptomology had been controlled with medication. Tr. 692, 988. The report stated that Miller would be discharged from prison in May 2016 and would be on parole until August 2016. Miller denied having any symptoms related to her diagnosis at the time. Tr. 699.

In progress notes dated June 17, 2016, Miller's physician states that she was stable on her medications and she was diagnosed with non-intractable generalized idiopathic epilepsy without status epilepticus. Tr. 834. She was prescribed Xanax and Norco for chronic pain. Tr. 844. She was also prescribed Dilantin and her other medications were continued. *Id.* A Memorial Hermann Emergency Department report dated August 25, 2016, states that Miller's CT scan showed no evidence of a Crohn's disease flare or colitis. Tr. 772, 777.

In a consultation report dated October 27, 2016, Miller was treated at Memorial Hermann for Crohn's disease, abdominal pain, peptic ulcer disease, and mild chronic gastritis. Tr. 12, 731, 761, 765, 874, 888, 1082. This examination showed that the claimant had normal range of motion

in her back with no signs of tenderness. Tr. 745. Miller had normal range of motion in her musculoskeletal system with normal strength and no tenderness, swelling, or deformity. *Id.* It was also noted that she had mild abdominal tenderness. *Id.*

Bayshore Medical Center records show Miller was hospitalized on December 2, 2016, for abdominal pain. Tr. 888. The records state that her seizure disorder is stable and her bleeding ulcer was improved with medication. *Id.* The examination conducted at this time showed Miller's musculoskeletal system was normal with painless range of motion. Tr. 927. It stated she was neurologically intact and that she was prescribed sumatriptan for migraine headaches. Tr. 927, 30.

Progress notes from an appointment with treating physician, Dr. Kirkwood, on April 17, 2017, show that Miller's blood pressure was 100/60 and she was treated for essential hypertension, which was controlled with medication. Tr. 1082. Dr. Kirkwood's treatment notes show that Miller continued to be treated for chronic pain, migraines, and seizures. *Id.* Dr. Kirkwood refilled her medications during this appointment. *Id.*

Treatment records from a physical examination conducted on June 9, 2017 at Strawberry Health Center reveals that Miller was not under acute distress and walked with a limp. Tr. 1109, 11. She had no spinal tenderness and had normal range of motion. The straight leg raise test conducted was negative bilaterally. *Id.* Miller was encouraged to get regular exercise. *Id.* The physician diagnosed her with complicated migraine and seizure and she was described as having had a cerebrovascular accident with right hemiplegia. *Id.* However, when later visiting the health center on July 7, 2017, the record indicates that her right hemiplegia has improved. This examination also indicated that Miller had normal muscle strength bilaterally and a normal gait.

Here, substantial evidence supports the ALJ's finding at steps two and three. This factor weighs in favor of the ALJ's decision.

7

Plaintiff contends that the ALJ erred at step two in failing to find any gastrointestinal or mental impairments as severe despite various medical opinions stating the impairments were severe. Doc. 16 at 13. Specifically, Miller argues that the ALJ rejected the only two opinions regarding her mental impairments in determining that they were not severe. *Id.* at 14. Miller states that the ALJ's non-severe finding for the gastrointestinal impairments was also not supported by the evidence, relying on the Plaintiff's treatment record and Dr. Bentlif's statement that the gastrointestinal impairment had not been fully evaluated. *Id.*

In determining whether Miller's mental impairments were severe, the ALJ found that Miller's symptomology was controlled with medication and she no longer qualifies for services through MHMRA. Tr. 692. The ALJ, citing to the function report completed by Miller on May 31, 2017, shows that because Miller's "medically determinable mental impairments cause no more than "mild" limitation in any of the functioning areas, they are nonsevere." Tr. 14.

The ALJ determined that Miller's gastrointestinal and hypertension impairments were nonsevere by referring specifically to Miller's treatment record indicating that she has been treated for these impairments. Tr. 12, 731, 761, 765, 874, 888, 1082. The ALJ also noted Miller's CT scan in August, 2016 showed no evidence of Crohn's disease or colitis. Tr. 12, 772, 777. The ALJ found that these impairments cause no more than minimally vocationally relevant limitations, and therefore, are nonsevere. Tr. 13. Specifically, the objective medical evidence shows that Miller's gastrointestinal and hypertension impairments have been treated on numerous occasions with medication, therefore, the ALJ determined that these impairments do not met the twelve-month duration requirement. 42 U.S.C. § 1382c(a)(3)(a). The medical evidence Miller argues supports a

"severe" finding is not sufficient to meet her burden of showing that the impairments significantly limit her ability to work for a continuous twelve-month period.

### b. Opinion Evidence

To determine whether the claimant is disabled, the ALJ will always evaluate every medical opinion in the claimant's case record and explain the weight accorded to the opinions, regardless of its source, together with the rest of the relevant evidence received.
20 C.F.R. §§ 404.1527(b)-(c), 414.927(b)-(c). "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)
(citing 20 C.F.R. § 404.1526 (1980)).

A consultative examination conducted by Dr. Tran on September 28, 2016, shows that Miller had a normal range of motion and physical functioning. Tr. 724-25. The examination revealed that Miller could ambulate without an assistive device. Tr. 724. She could tip toe, ambulate on heels, and squat. *Id.* Her shoulders and elbows had full range of motion. *Id.* Miller had normal bilateral grip strength in her hands. *Id.* She had pain in her hips while doing straight leg raises. *Id.* Miller had tenderness in her back and was not able to bend down from a standing position. *Id.* She had full range of motion in her knees and ankles. *Id.* An x-ray of Millers lumbar spine conducted by Dr. Tran showed severe L5-S1 degenerative disc disease and spondylosis. Tr. 725. Dr. Tran opined that Miller was able to sit, stand, ambulate, listen, and communicate without significant problem. *Id.* Dr. Tran's report states that Miller would need to move constantly for comfort, specifically, she could sit less than 10 minutes and stand less than 15 minutes. *Id.*

Dr. Schade, a State Agency physician opined in a disability determination explanation dated November 3, 2016, that Miller had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. Tr. 88. Dr. Rowley, a State Agency physician opined based on her review of Miller's medical records that Miller was able to perform a modified light residual functional capacity. Miller was limited to standing and walking for four hours in an eight-hour workday due to back pain. Tr. 91-92.

On January 24, 2017, Dr. Turner, a State Agency physician opined that Miller had moderate restriction to understand, remember, or apply information; no difficulties in interacting with others; moderate difficulties in concentrate, persist, or maintain pace, and mild difficulties in adapt or manage oneself. Tr. 104.

During the ALJ hearing on October 19, 2017, Philip S. Bentlif, M.D., an impartial medical expert, board certified in internal medicine, testified the claimant has had a history of treatment for migraines, seizures, degenerative disc disease, status post laminectomy at L4-5, failed laminectomy syndrome, surgery of her intestine with ulcer, abdominal pain unspecified, right facial drop, and hemiplegia." Tr. 45-46. Dr. Bentlif testified that the record does not support a diagnosis of Chron's Disease although Miller underwent surgery and testing. Tr. 46. Dr. Bentlif further testified that no physician had prescribed a walker. Tr. 48. He also testified that the EEG showed left temporal slowing but no epileptic process. Tr. 49. Based on his review of the medical record, "Dr. Bentlif opined [that Miller] was limited to sedentary activity" and could not carry more than 10 pounds. Tr. 50-51. He further testified that she could "never reach overhead with the right hand, shoulder level occasionally, and fingering and feeling limited to frequent bilaterally. She should not be exposed to unprotected heights, moving mechanical parts, operating motor

vehicle, and humidity and wetness." Tr. 51. Miller can have "occasional exposure to dust, extreme temperatures, vibrations and loud noises." Tr. 52. The ALJ affords great weight to this opinion based on Dr. Bentlif's certification in internal medicine and with the Commissioner's Listings.

The ALJ "is responsible for assessing the medical evidence and determining the claimants [RFC] . . . " which can be supported by substantial evidence even if he does not discuss the evidence used in support of his decision or the evidence he rejected. *Escalante v. Colvin*, No. 3:14-CV-0641-G-BH, 2015 WL 1443000, at *10 (N.D. Tex. Mar. 31, 2015) (quoting *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985), (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p.

After review of the entire record, the ALJ found Miller has the residual functioning capacity to "perform sedentary work (occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand and walk three hours, and sit for about 6 hours in an 8-hour workday) . . . except she cannot climb ladders, ropes, or scaffolds. [Miller] can occasionally climb ramps and stairs. Tr. 14. She can occasionally stoop, kneel, crouch, and crawl. *Id.* [Miller] can never perform overhead reaching with the right hand. She is limited to frequent bilateral fingering and feeling. *Id.* [Miller] cannot work around unprotected heights, open flames, or dangerous machinery. *Id.* She cannot be in environments with extreme cold, heat, or humidity." *Id.*

Miller argues here that although the ALJ acknowledged consultative examiner Dr. Tran's opinion regarding the Claimant's sit/stand limitation, he failed to state the weight he affords to the opinion which is a sufficient error requiring remand. Doc. 16 at 11.

The ALJ will give more weight to the medical opinion of an examining physician than a non-examining physician. § 404.1527(c)(1). "In the absence of any conflicting opinions from

other examining sources, failure to consider and weigh [a consultative examiner's medical opinion] was error." *Nicaragua v. Colvin*, No. 3:12-CV-2109-G(BN), 2013 WL 4647698, at *6 (N.D. Tex. Aug. 29, 2013). "The Fifth Circuit has held that '[p]rocedural perfection in administrative proceedings is not required', and a court 'will not vacate a judgment unless the substantial rights of a party are affected.'" *Makara S. M. v. Berryhill*, No. 3:18-CV-00219-BH, 2019 WL 1356602, at *12 (N.D. Tex. Mar. 26, 2019). "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Makara S. M.*, 2019 WL 1356602, at *12, (citation omitted) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). To establish that this error warrants remand, Miller must show that the opinion evidence might have rendered a different decision had it been properly considered. *Makara S. M.*, 2019 WL 1356602, at *12. The consideration and weight the ALJ gives to medical opinions directly affect the RFC. *See Kneeland v. Berryhill*, 850 F.3d 749, 762 (5th Cir. 2017) (explaining that failure to consider and weigh a medical opinion is not a harmless error).

Here, the ALJ considered Dr. Tran's opinion, but failed to assign what weight, if any given to Dr. Tran's opinion, and in particular, that Miller required a sit/stand option due to postural limitations, which in turn, Dr. Bentlif, the testifying medical advisor, stated could still exist despite surgery. Tr. 52-53. Here, there is no conflicting evidence of an examining physician, only that of non-examining sources. Without knowing the exact weight given to Dr. Tran's opinion, it is impossible to know whether the RFC was conducted properly. *See id.* If Dr. Tran's opinion was afforded some weight, it would likely have affected the RFC and in turn affect the jobs the ALJ finds available at step 5. *See id.* "It is possible that the ALJ considered and rejected [Dr. Tran's] opinion, but without any explanation, we have no way of knowing." *Id.* The ALJ should have discussed the weight afforded to Dr. Tran's opinion, as he had for the other opinion evidence. The

ALJ legally errored in determining the RFC, therefore, it is not supported by substantial evidence. Because the ALJ errored in his evaluation of the medical opinion evidence, the matter is remanded to the ALJ for further consideration of the medical opinion evidence, a new RFC assessment, and if necessary, submit a new hypothetical for a vocational expert.

**c. Subjective Evidence**

The next element weighed by the ALJ is the claimant's subjective opinion regarding pain and intensity of their impairments. "[S]tatements about [the claimant's] pain or other symptoms will not alone establish that [they] are disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled. 20 C.F.R. § 416.929(a). "Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled." *Travis v. Berryhill*, No. CV H-15-3399, 2019 WL 1205161, at *8 (S.D. Tex. Mar. 14, 2019) (citing *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985). "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the [ALJ], who has had the opportunity to observe the claimant." *Travis*, 2019 WL 1205161, at *8 (citing *Hames v. Heckler*, 707 F.2d 162, 166).

Miller testified at the ALJ hearing that she was prescribed a wheelchair but uses a walker with a seat instead due to the problems with her right leg. Tr. 29. She has used a wheelchair since

July 2015, but her condition has improved and she now uses a walker. Tr. 15. Miller testified that she uses the walker for pain relief, but she needs it when she has a seizure because her right side goes numb. Tr. 15. Miller states that she uses the walker when out of the house. Tr. 29. However, she does not use the walker at home except when she has no use of her right leg. *Id.*

In a function report conducted on May 31, 2016, Miller states that she has difficulty caring for her personal hygiene and grooming, and needs someone to help her. Tr. 237, 260. She is able to prepare a simple meal, clean the house, and do laundry. Tr. 238. Miller can ride in a car but she cannot leave her residence alone. Tr. 239. Miller is able to shop in stores, by phone, by mail, and by computer. *Id.* She can pay her bills and count change; however, her mother helps with her savings account and checkbook. *Id.* Miller's hobbies are reading, watching tv, and putt-putt golf. She is able to spend time with others and attends church on a regular basis. Tr. 240.

In a later function report, dated December 3, 2016, Miller stated that she has difficulties caring for her personal hygiene and grooming and needs someone to help her with these tasks. Tr. 260. In this report Miller claims that she now has difficulty concentrating and is no longer able to go anywhere on a regular basis. Tr. 262.

Here, because the ALJ made and supported his credibility determination based, in part, on his consideration of conclusions reached by Dr. Tran, and gives that the matter must be remanded for further development of the record, and because the credibility assessment is inextricably intertwined with the ALJ's assessment of Miller's RFC, which is not supported by substantial evidence, this factor neither weighs in favor of or against the ALJ's determination.

### d. Education, Work History, and Age

The last element the court will weigh is Miller's education, work history, and age. The ALJ questioned vocational expert, Nicole Fuscaldo at the hearing. A vocational experts testimony

14

constitutes substantial evidence when based on a properly phrased hypothetical question. *Travis*, 2019 WL 1205161, at *9 (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir 1994). A hypothetical is sufficient when it reasonably incorporates all impairments that the ALJ determines are supported by the whole record. *Travis*, 2019 WL 1205161, at *9. The ALJ is required to give the claimant an "opportunity to correct any defect in the hypothetical by mentioning additional limitations to the vocational expert." *Bowling*, 36 F.3d at 435-36.

Here, the ALJ posed six hypotheticals to the VE. Tr. 42-44; 65-74. Miller's attorney also had the opportunity to question the VE. Tr. 71-74. The record contains the hypothetical questions posed by the ALJ:

> Q: [#1] Assume a hypothetical individual of like claimant age, education, and work experience with the following limitations. For this first hypothetical, the individual is limited to light work as defined by the Commissioner. And I am going to impose postural limitations. Never ladders, ropes or scaffolds, occasional ramps or stairs, stooping, kneeling, crouching, crawling occasionally. No right-hand overhead reaching. Frequent bilateral fingering and feeling. No work around unprotected heights, open flames, dangerous or moving machinery. No extremes of heat, cold or humidity. Under that hypothetical, would such an individual be able to perform any of Claimant's past relevant work? Tr. 66.
> 
> A: They could perform both jobs [of accounting clerk and office helper]. *Id.*
> 
> Q: [#2] [Keeping] the exertional level at light . . . [w]e're going to impose a sit-or stand-at-will option, where the individual can sit or stand at their discretion to perform their job; same postural . . . Same balance restriction. . . . Same environmental limitations. But this time, however, I'm going to add an additional restriction as well of off task once a month for an hour in addition to normally-scheduled breaks. Under that hypothetical, would such an individual be able to perform any of Claimant's past relevant work? Tr. 67.
> 
> A: Well, I think they would still be able to perform their job as an Office Helper, because that's light work. It's really hard, at sedentary, to get the sit/stand at will, because you need to be able to meet the six-hour sitting requirement for sedentary positions. *Id.*
> 
> Q: Would there be any other work in the National Economy that such an individual could do? Tr. 68.

A: Yes, judge. They could perform work as a Counter Clerk. That's a light, unskilled position with an SVP of 2, DOT code 249.366-010, and there are around 150,000 types of those positions. . . . She could also perform work as a Mail Clerk. That's also light, unskilled, with an SVP of 2, DOT code 209.687-026, and there are around 285,000 of those positions. Tr. 68-69.

Q: [#3] . . . [Keep] the same restrictions as far as at light. . . . We'll go ahead and put the standing option in. Same posturals, the same balance, same environmental. This time, the individual would be off task an hour a week in addition to normally-scheduled breaks. Under that hypothetical, would such an individual be able to perform any of Claimant's past work? Tr. 69.

A: They could, Judge. You'd have to be off task 20% or more of your entire workday each day for that to come into play. So, if you were off task just one hour throughout your week, I think you would still be within the parameters. *Id.*

Q: Okay. And if we take the sit/stand option off the table and just make it light, then they would be able to do both jobs [past work], correct? *Id.*

A: Correct. *Id.*

Q: To hypothetical #3, we're going to add one more requirement, and that would be that they would work only while using a walker for balance, as needed for standing. Under that hypothetical, with the walker, would the individual be able to do any of Claimant's past relevant work? *Id.*

A: I don't think so judge, because if we're looking at that light position, she's still going to be required to walk a lot. Plus, the carrying and lifting requirements for that job with a walker would almost be impossible.

Q: [#4] If we were to reduce the work to sedentary . . . limited to sedentary exertional limitation as defined by the Commissioner. Same posturals, . . . same manipulation limitations, same balance limitations, same environmental limitation. Would that individual be able to perform any of Claimant's past relevant work? Tr. 69-70.

A: They would still be able to perform the Accounting Clerk position under that hypothetical judge. Tr. 70.

Q: Would there be any other jobs . . . that they would be able to do? *Id.*

A: They could perform work as a Surveillance Monitor. That's a sedentary, unskilled position with an SVP of 2, DOT code 379.367-010, and there are around 140,000 of those positions . . . 4,000 of those positions in the State of Texas, Judge. . . . They could also perform work as a Charge Account Clerk. That's also sedentary, unskilled with an SVP of 2, DOT code 205.367-014, and there are around 180,000

16

of those nationally, 4,500 in the State of Texas. [She can also perform work as] an Order Clerk, Judge, also sedentary, unskilled with an SVP of 2, DOT code 209.567-014, and there are around 185,000 of those positions nationally, 5,500 in the State of Texas. *Id.*

A: [In] the last hypothetical you didn't put the off task one hour per week, but then, when you re-asked me about [the addition of this limitation], I said that my answer would have stayed the same. Tr. 73.

The record show's Miller's Attorney asked the VE questions regarding the hypotheticals. Tr. 72.

Q: If an individual misses work at least two times per month on a consistent basis due to doctors' visits, could that person maintain employment? *Id.*

A: They couldn't. If they were missing two or more workdays each work month, they wouldn't be able to be competitively employed. *Id.*

However, because we conclude that the ALJ legally erred regarding Dr. Tran's opinion evidence when determining the RFC, the hypotheticals posed to the VE are not properly phrased, rendering the VE testimony unsupported by substantial evidence. On remand, the ALJ should reconsider Miller's ability to perform any work.

**Conclusion**

Based on the foregoing, and the conclusion that the opinion of the consultative physician, Dr. Tran, was not properly considered, and that the ALJ's RFC is not supported by substantial evidence, and that further development of the record is necessary, and that based on the information in the ALJ's opinion, substantial evidence does not support the ALJ's decision, the Magistrate Judge ORDERS that Defendant's Motion for Summary Judgment (Document No. 13) is DENIED, that Plaintiff's Motion for Summary Judgment (Document No. 15) is GRANTED, and that the case is REMANDED to the Social Security administration pursuant to section four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this 2d day of July, 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE